**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BARAA FADEL, HAKIMA AITELHADJ, KARON COLEMAN, MATTHEW GREENE, and JOSEPH MCGUNIGLE on behalf of themselves and others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>G4S SECURE SOLUTIONS (USA) INC., UNIVERSAL PROTECTION SERVICES, LLC, and ALLIED UNIVERSAL SECURITY SERVICES, LLC,<br><br>　　　　　Defendant. | No. |

## DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

Defendants G4S Secure Solutions (USA) Inc. ("G4S") and Universal Protection Service, LLC d/b/a Allied Universal[1] ("Allied Universal") (collectively, "Defendants"), by and through their undersigned counsel, file this Notice of Removal consistent with the provisions of 28 U.S.C. §§ 1332, 1441, and 1446.

## I.　　JURISDICTION AND VENUE

1.　　Removal of this action is proper under 28 U.S.C. §§ 1332(a) and 1441(a), because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs, as explained in detail below. 28 U.S.C. §§ 1332, 1441(a), 1446(b).

---

[1] Incorrectly named in the Complaint as separate entities Universal Protection Services, LLC and Allied Universal Security Services, LLC.

2.      The Superior Court for Suffolk County of the Commonwealth of Massachusetts is located within the District of Massachusetts. *See* 28 U.S.C. § 101. Therefore, venue is proper in this Court because it is the district "embracing the place where such action is pending." 28 U.S.C. § 1441(a)

## II.    STATE COURT ACTION

3.      On September 28, 2022, Plaintiffs Baraa Fadel ("Fadel"), Hakima Aitelhadj ("Aitelhadj"), Karon Coleman ("Coleman"), Matthew Greene ("Greene"), and Joseph McGunigle ("McGunigle") (collectively, "Plaintiffs") filed a Complaint against Defendants in the Superior Court of Massachusetts, County of Suffolk, captioned *Baraa Fadel, Hakima Aitelhadj, Karon Coleman, Matthew Greene, and Joseph McGunigle, on behalf of themselves and others similarly situated v. G4S Secure Solutions (USA) Inc., Universal Protection Services, LLC, and Allied Universal Security Services, LLC*, Civil Docket No. 2284-CV-02228 (the "State Court Action"). The Complaint is attached to the Declaration of Matthew Lambach ("Lambach Decl.") as **Exhibit A**.

4.      On September 29, 2022, the Summons, Complaint and Civil Tracking Order were served on G4S and Allied Universal's agent for service of process, Corporation Service Company, by process server. **Lambach Decl. ¶ 14**.

5.      The Complaint arises out of Plaintiffs' employment with Defendants. Defendants are security services providers and in April 2021, Allied Universal acquired G4S**. Lambach Decl., Ex. A**.

6.      Plaintiffs bring the Complaint on behalf of themselves, and they assert class allegations on behalf of all others who are similarly situated, pursuant to M.G.L. c. 149, §§ 148 and 150, M.G.L. c. 151, §§ 1B and 20, and Massachusetts Rule of Civil Procedure 23.

7.     Plaintiffs assert the following claims: (1) unpaid wages, in violation of M.G.L. c. 149, § 148, pursuant to M.G.L. c. 149, §§ 150; and (2) failure to pay wages for overtime worked, in violation of M.G.L. c. 151, § 1A, pursuant to M.G.L. c. 151, § 1B.

8.     Plaintiffs seek unspecified compensatory damages and noneconomic damages, including, but not limited to restitution for Plaintiffs and all similarly situated employees, going back to at least August 2, 2019. Plaintiffs also allege that "there is no reasonable likelihood that the plaintiffs will recover an amount less than or equal to $50,000". **Lambach Decl., Ex. A., pp. 13-14 and ¶ 12**.

9.     There have been no other filings or proceedings in the State Court Action.

### III.     REMOVAL IS PROPER BASED ON DIVERSITY OF CITIZENSHIP

10.     For the reasons discussed below, this action is properly removable because the United States District Court has original jurisdiction in this case under 28 U.S.C. § 1332(a)(1), which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and [the action] is between [] citizens of different States..."

#### a.     Plaintiffs and Defendants are Citizens of Different States

11.     Under 28 U.S.C. § 1441(a), a defendant may remove an action to federal court when a plaintiff files suit in state court, but could have invoked the original jurisdiction of the federal court. 28 U.S.C. § 1441(a).

12.     To remove to this Court, Defendants must plausibly allege "a short a plain statement of the grounds for removal" and evidentiary submissions are not required. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014); 28 U.S.C. §1446(a)).

13.     At the time this action was filed and removed to this Court, Plaintiffs were, and remain citizens of Massachusetts. Specifically, Plaintiffs allege that: Fadel resides in Boston, Massachusetts; Aitelhadj resides in Brockton, Massachusetts; Coleman resides in Brockton Massachusetts; Greene resides in Boston, Massachusetts; and McGunigle resides in Quincy, Massachusetts. **Lambach Decl., Ex. A, ¶¶ 3-7**. Based on the Complaint, Plaintiffs are domiciled citizens of the state of Massachusetts.

14.     Plaintiffs allege that venue is proper in Suffolk County because Defendants "maintain a usual place of business in Suffolk County." **Lambach Decl., Ex. A, ¶ 13**.

15.     "[T]he citizenship of a limited liability company 'is determined by the citizenship of all of its members.'" *D.B. Zwirn Special Opp. Fund, L.P. v. Mehrotra*, 661 F.3d 124, 127 (1st Cir. 2011) (quoting *Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006)).

16.     Neither G4S nor Allied Universal are citizens of Massachusetts as neither entity is incorporated in Massachusetts, neither entity maintains a principal place of business in Massachusetts, and neither entity has any members in the Massachusetts. **Lambach Decl., ¶¶ 9-13**.

17.     G4S is a corporation, registered in Florida, with its headquarters and principal place of business in Jupiter, Florida. **Lambach Decl., ¶ 9**.

18.     Allied Universal is a corporation, registered in Pennsylvania, with its headquarters and principal place of business in Conshohocken, Pennsylvania. **Lambach Decl., ¶ 11**.

19.     The United States Supreme Court held the principal place of business is the "nerve center" where the company's high-level officers direct, control and coordinate the company's activities. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1184 (2010).

20.    G4S' high-level officers that direct, control, and coordinate its activities are located in Jupiter, Florida. **Lambach Decl., ¶ 9**. For purposes of diversity of citizenship, G4S is a citizen of Florida.

21.    Allied Universal's high-level officers that direct, control, and coordinate its activities are located in Conshohocken, Pennsylvania. **Lambach Decl., ¶ 11**. For purposes of diversity of citizenship, Allied Universal is a citizen of Pennsylvania.

22.    Since Plaintiffs are citizens of Massachusetts, G4S is a citizen of Florida, and Allied Universal is a citizen of Pennsylvania, there is complete diversity of citizenship between Plaintiffs and Defendants and removal of this action is proper under 28 U.S.C. § 1332(a)(1).

**b.    The Amount in Controversy Exceeds the $75,000 Jurisdictional Threshold**

23.    Pursuant to 28 U.S.C. § 1446(a), a defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and need not contain evidentiary submissions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 49–50 (1st Cir. 2009) (requiring a "reasonable probability" that the amount in controversy meets the jurisdictional minimum).

24.    This is an action to recover damages for alleged violations of M.G.L. c. 149, § 150 M.G.L. c. 151, § 1A. Plaintiffs, who worked as security guards for Defendants, allege that Defendants do not pay their security officers for all hours worked. The Civil Action Cover Sheet fails to set forth how much money Plaintiffs are seeking in damages. **Lambach Decl., Ex. A, p. 3 of 16**.

25.    In the Complaint, Plaintiffs allege that they seek: (i) certification of a class of similarly situated individuals; (ii) restitution for unpaid wages that are due to the named Plaintiffs

and all similarly situated employees, going back to at least August 2, 2019; (iii) restitution for all hours worked in excess of 40 hours per week; (iv) restitution for all other unpaid and/or untimely paid wages and other benefits; (v) other damages incurred; (vi) statutory trebling; (vii) interest; (viii) attorneys' fees and costs; (viii) pre- and post-judgment interest; and (ix) all other relief to which Plaintiffs and the putative class members may be entitled.  Plaintiffs also allege that "there is no reasonable likelihood that the plaintiffs will recover an amount less than or equal to $50,000." **Lambach Decl., Ex. A pp. 13-14; and Lambach Decl., Ex. A, ¶ 12**.

26.     Although Defendants believe that Plaintiffs' claims have no merit and Defendants reserve their rights to contest both the merits of Plaintiffs' claims and their alleged methodology for calculating their damages, based on Defendants' expectation of Plaintiffs' assertion of damages using the amount in controversy is in excess of $75,000.

27.     As alleged in the Complaint, "Defendants… do not pay [their employees who work at the General Electric Headquarters (the "Subject General Electric Site")] for all hours worked." **Lambach Decl., Ex. A, ¶ 17**.

28.     Plaintiffs allege, "Defendants…have a policy and practice of requiring officers to report at least approximately ten minutes before the start of their shift and to work during this time, but Defendants do not compensate the officers for this time." **Lambach Decl., Ex. A, ¶ 18**.

29.     Plaintiffs further allege, "Defendants…have had a practice of requiring certain officers to participate in telephone conferences of up to approximately one hour to update higher management on personnel issues and other matters, but Defendants do not compensate for those officers for this time" **Lambach Decl., Ex. A, ¶ 20**.

30.     Plaintiffs also claim that "Defendants…have also had a practice of requiring and/or permitting officers to arrive early, and/or to stay late after each shift and perform work [and] to

perform additional off-the-clock work such as responding to emails, but Defendant[s] do[] not compensate the officers for this time." **Lambach Decl., Ex. A, ¶ 21**.

31.     As per the Complaint, the subject timeframe is August 2, 2019 to present. **Lambach Decl., Ex. A, pp. 13-14.**

32.     At this juncture there are five named plaintiffs and Plaintiffs intend on representing a purported class in excess of one hundred employees.

33.     For example, there are currently 32 security officers working at the Subject General Electric Site, working across 24 scheduled shifts per week. Each officer works approximately five shifts per week. *See* Declaration of Darlene Madden (Madden Decl.) at **¶ 12**.[2]

34.     Security officers at the Subject General Electric Site are currently paid at a wage rate at a minimum of $21.00 per hour. **Madden Decl., ¶ 13**.[3]

35.     Assuming the validity of Plaintiffs' allegation that "Defendants…have a policy and practice of requiring officers to report at least approximately ten minutes before the start of their shift and to work during this time, but Defendants do not compensate the officers for this time[]", Allied Universal's potential exposure of damages for this time alone would be **no less than $262,080.**[4]

---

[2] Prior to this time, services at the Subject General Electric Site were provided by G4S Secure Solutions (USA), Inc ("G4S"). In April 2021, an Allied Universal parent company acquired the ultimate parent company of G4S and its subsidiaries, including G4S. *See* Madden Decl., fn. 1. Defendants are in the process of determining exactly how many officers worked at the Subject General Electric Site during the statutory period.

[3] Hourly wages at the Subject General Electric Site range from $21.00 per hour to $28.00 per hour. *See* Madden Decl., fn. 2. In addition, the Site Supervisor is currently compensated at a rate of $28.85 per hour.

[4] Defendants note that this figure was obtained using a conservative approach as Defendants calculations considered the lowest hourly wage rate of $21.00.

36.     Defendants arrived at the figure of $268,800 through the following calculation

(32 *5= 160; 160 *3.5 = 560; 560 * 156 = 87,360; 87,360 * 3 = 262,080):

- 32 x 5 = **160**:        **32 officers** multiplied by **five shifts** equals **160 minutes of unpaid time**.

- 160 x 3.5 = **560**:    **160 minutes of unpaid time** multiplied **by 3.5 dollars per shift** (ten minutes; one-sixth of the lowest hourly wage rate ($21.00 per hour)) equals **560 dollars per week.**

- 560 x 156 = **87,360**: **560 dollars per week** multiplied by **156 (statutory period under the Massachusetts Law)** equals **$87,360**.

- 87,360 x 3 = **$262,080**:     Pursuant to M.G.L. c. 149, § 150, a plaintiff who prevails in an action like this "shall be awarded treble damages." As such, Plaintiffs would be automatically entitled to a tripling of their damages if they prevail in the action. Here, that figure would be no less than $262,080 (87,360 multiplied by 3).

37.     Through a potential recovery for unpaid wages alone, Defendants have easily satisfied the jurisdictional requirement that the amount in controversy is in excess of $75,000.

38.     In fact, through the trebling of Plaintiffs' potential recovery for unpaid wages, Defendants have plausibly alleged that Plaintiffs would be entitled to nearly four times the jurisdictional requirement.

39.     Furthermore, under M.G.L. c. 149, § 150, an award of reasonable attorneys' fees and costs is a mandatory form of relief for a plaintiff who prevails in a wage action like this. *See Killeen v. Westban Hotel Venture, LP.*, 69 Mass. App. Ct. 784, 789–90 (2007) (noting mandatory nature of award of attorneys' fees in cases involving the Wage Act). Federal courts consider future mandatory fee awards when examining the amount in controversy for diversity jurisdiction. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001) (allowing for inclusion of attorneys' fees in determining amount in controversy "when a statute mandates or allows payment of the fees"); *Dep't of Recreation & Sports of Puerto Rico v. World Boxing Assoc.,* 942 F.2d 84, 89–90

(1st Cir. 1991) (holding same; allowing for estimate of future fees, to the extent reasonable, to be included in amount in controversy); *Youtsey v. Avibank Mfg., Inc.*, 734 F. Supp. 2d 230, 238 (D. Mass. 2010) (noting parties' agreement that "potential attorney's fees, which would be mandated by [Massachusetts Wage Act], should be added to the calculation" for the amount in controversy); *Raymond v. Lane Const. Corp.*, 527 F. Supp. 2d 156, 159–61, 164 (D. Me. 2007) (rejecting argument that *Spielman* decided whether future fees should be included in assessing the jurisdictional threshold; concluding reasonable future attorneys' fees were properly considered in determining whether jurisdictional threshold was satisfied even when employment statute at issue only allowed court to award attorneys' fees in its discretion).

40.    Here, while Defendants contend that Plaintiffs' claims have no merit and, as such, Defendants intend to vigorously defend this action (whether in arbitration or court) through trial and beyond, if necessary, particularly given the potential for class action liability or future plaintiffs asserting similar types of claims. Defendants and Defendants' counsel's experience in fully litigated cases like this is that an individual plaintiff asserting a wage or related employment claim usually seeks over $100,000 in fees. Thus, it is likely that each of the Plaintiff's reasonable attorneys' fees (even without aggregating them for the possible class) in this case will be considerable, and certainly more than the $50,000 or $75,000 necessary to satisfy the jurisdictional threshold. Indeed, courts have routinely awarded attorneys' fees in excess of $50,000 or $75,000 to prevailing plaintiffs in employment related litigation such as this. *See, e.g., Marcotte et al. v. Garelick Farms, LLC*, C.A. No. 11-01136 (Norfolk County, 2014) (two plaintiff wage claim resulting in award of $97,560 in attorneys' fees); *Ansel v. Hyman Companies*, C.A. No. 05-01534 (Suffolk County, 2012) (wage and retaliation claim by single plaintiff resulting in award of $179,039 in attorneys' fees; *Estes v. Pineland Farms, Inc.*, 28 Nat. J.V.R.A. 5:30, 2012 WL

8467264 (D. Me. Jan. 25, 2012) (unpaid wage and overtime claims resulting in award of $79,824 in attorney's fees).

41.      Thus, a typical award of attorneys' fees would cause each Plaintiff to satisfy the amount in controversy requirement. Additionally, using Defendants' own anticipated attorneys' fees as a benchmark, Defendants expect to incur over $100,000 in fees through trial, further supporting the amount each Plaintiff is likely to seek.

42.      Accordingly, it is all but certain that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## A. DEFENDANTS HAVE SATISFIED ALL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. SECTION 1446

43.      In circumstances like this, removal is proper. *See Sullivan v. Sleepy's LLC*, No. 1:17-cv-12009-RGS (D. Mass. 2017) at ECF Dkt. No. 39 (in Massachusetts Wage Act class action, holding, "[t]he court is satisfied that the defendants have adequately demonstrated in good faith that the amount in controversy, at least as to plaintiff Bryant, exceeds the $75,000 threshold required for diversity jurisdiction, particularly because the statutory framework at issue authorizes treble damages and attorney's fees.").

44.      Defendants timely filed this Notice of Removal within thirty days of service of the Complaint. 28 U.S.C. §1446(b); Fed. R. Civ. P. 6(a). Defendants were served with the Complaint on September 29, 2022, therefore, the deadline to file this Notice of Removal is October 31, 2022.[5]

45.      To date, Defendants have not filed any responsive pleadings in the State Court Action, and no substantive proceedings have transpired in that action.

---

[5] Thirty days after September 29, 2022 is Saturday, October 29. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), where a deadline falls on a Saturday, Sunday or legal holiday, the period continues to run until the next business day. October 31, 2022 is the next business day following October 29, 2022.

46.     Pursuant to 28 U.S.C. § 1446(d), a notice to the state court of removal, along with a copy of this Notice will be filed with the Massachusetts Superior Court, Suffolk County. Additionally, a copy of the notice to the state court and a copy of this Notice will also be served upon Plaintiffs' counsel.

47.     Pursuant to Local Rule 81.1, Defendants will file with the Court certified or attested copies of all records, proceedings, and docket entries in the state court within twenty-eight (28) days after filing this Notice of Removal.

48.     By removing this matter, Defendants do not waive, or intend to waive, any defense or affirmative matter, including but not limited to defenses of class action waiver and mandatory arbitration required by Plaintiffs' employment agreements.

49.     If any question arises as to the propriety of the removal of this action, including but not limited to the filing of a motion to remand by Plaintiffs, Defendants request the opportunity to brief any disputed issues and to present oral argument in support of its position that this case is properly removable.

50.     For all the foregoing reasons, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. This action originally could have been brought in this District. This action, therefore, is removable from the Massachusetts Superior Court, Suffolk County, to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1441.

**WHEREFORE**, Defendants hereby give notices that this action is removed from the Massachusetts Superior Court, Suffolk County, to the United States District Court for the District of Massachusetts.

Dated: October 19, 2022

Respectfully submitted,

*/s/ Mark S. Bodner*

**MELICK & PORTER, LLP**
Mark S. Bodner
One Liberty Square
Boston, MA 02109
mbodner@melicklaw.com
617-525-6200

-and-

**MARTENSON, HASBROUCK & SIMON LLP**

Robin E. Largent
*Pro Hac Vice Forthcoming*
455 Capitol Mall
Suite 400
Sacramento, California 95814
916-970-1430

Kelly Eisenlohr-Moul
*Pro Hac Vice Forthcoming*
2573 Apple Valley Road NE
Atlanta, Georgia 30319
keisenlohr-moul@martensonlaw.com
231-301-1249

Devin S. Cohen
*Pro Hac Vice Forthcoming*
40 Exchange Place, Suite 1502
New York, NY 10005
dcohen@martensonlaw.com
332-345-2471

*Counsel for Defendants G4S Secure Solutions (USA) Inc. and Universal Protection Service, LLC d/b/a Allied Universal*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 19, 2022, a true copy of the above document was served on **FAIR WORK, P.C.** and **LAW OFFICE OF ALAN DAVID MEYERSON**, the attorneys of record for Plaintiff in the State Court Action via email.


*/s/ Mark S. Bodner*
_____
Mark S. Bodner