## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| BARAA FADEL, HAKIMA AITELHADJ, KARON COLEMAN, MATTHEW GREENE, and JOSEPH MCGUNIGLE, on behalf of themselves and others similarly situated, ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | Civil Action No. 1:22-cv-11827-FDS |
| v. ) ) | |
| G4S SECURE SOLUTIONS (USA), INC., UNIVERSAL PROTECTION SERVICES, LLC, and ALLIED UNIVERSAL SECURITY SERVICES, LLC, ) ) ) ) ) | |
| Defendants. ) ) | |

---

## PLAINTIFFS' ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF

Plaintiffs, on behalf of themselves and a putative class of over 100 employees, seek preliminary approval pursuant to Fed. R. Civ. P. 23 of a proposed class action settlement, and approval of a settlement notice to be issued to class members. The parties' settlement agreement is attached as Exhibit A, the proposed settlement notice is attached as Exhibit B, and a proposed order is attached as Exhibit C.

## BACKGROUND

Plaintiffs Baraa Fadel, Hakima Aitelhadj, KaRon Coleman, Matthew Greene, and Joseph McGunigle ("Named Plaintiffs"), filed this case against G4S Secure Solutions

(USA), Inc. ("G4S") and Universal Protection Service, LLC d/b/a Allied Universal Security Services ("Allied Universal"),[1] alleging that Defendants did not pay their security officers who were assigned to work at the General Electric headquarters site for all wages and overtime wages owed to them under Massachusetts law.  G4S was Plaintiffs' employer until approximately spring of 2021.  ECF Doc. No. 1-3 (Compl. ¶ 15).  At that time, Defendant Allied Universal took over and became the employer for Plaintiffs McGunigle and Greene.  Compl. ¶¶ 6, 7, 11.

Plaintiffs each worked as security officers at the General Electric Company's headquarters in Boston, Massachusetts.  Compl. ¶ 1.  Defendant G4S was their employer until it was acquired in 2021; Defendant Allied Universal then became their employer.  *Id.* ¶¶ 9, 10, 3-8.  Each Plaintiff was subject to an alleged policy and practice requiring them to report at least approximately ten minutes before the start of their shifts and to work, off-the-clock, during this time.  Compl. ¶ 18.  Their work included tasks such as debriefing officers they were relieving and checking the work site, all allegedly without pay.  *Id.* ¶ 19.  In addition, certain officers, including Plaintiff Fadel, allegedly participated in required, weekly telephone conferences of up to approximately one hour to update higher management, again without pay.  *Id.* ¶ 20.

Plaintiffs filed their Complaint in Massachusetts Superior Court on September 28, 2022.  The Complaint asserts two counts under Massachusetts law.  Count I, brought

---

[1]    Defendants assert that Universal is incorrectly named in the Complaint as separate entities Universal Protection Services, LLC and Allied Universal Security Services, LLC, and that Allied Universal is a d/b/a.

pursuant to Mass. Gen. L. c. 149, § 150, alleges Defendants failed to pay officers at the General Electric headquarters site for all hours worked and to pay time-and-a-half for overtime hours, violating Mass. Gen. L. c. 149, § 148.  Count II, brought pursuant to Mass. Gen. L. c. 151, § 1B, alleges Defendants' failure to pay time-and-a-half for overtime hours violated Mass. Gen. L. c. 151, § 1A.  Compl. at 8-9.  Plaintiffs sought lost wages, statutory trebling, interest, and attorneys' fees and costs.  *Id.* at 9-10.

Defendants G4S and Allied Universal filed a Notice of Removal dated October 21, 2022 and filed an Answer on October 26.  ECF Doc. Nos. 1, 3.  Defendants also filed a Motion to Compel Arbitration and Dismiss the Complaint as to Plaintiffs Greene and McGunigle on October 26, 2022.  Plaintiffs filed a Motion to Remand pursuant to 28 U.S.C. § 1447(c) and opposed Defendants' motion to compel arbitration.  ECF Doc. Nos. 16, 21.  On December 16, the Parties' counsel conferred and agreed to an immediate stay of the proceedings to allow the Parties the opportunity to partake in formal mediation and settlement negotiations.

The parties engaged in a mediation, with Defendants producing pre-mediation discovery to assist the discussions.  Pursuant to a Negotiation/Mediation Agreement, Defendants produced to Plaintiffs an anonymous class list identifying each member of the putative class with their start and end dates of employment and number of shifts worked during the class period, payroll data for putative class members, including information regarding their shifts, pay rates, and total hours paid, and data regarding putative class members that Defendants asserted were bound by arbitration agreements.  These materials allowed Plaintiffs to accurately assess the maximum

3

recovery possible for the class.  On April 13, 2023, the parties engaged in a full-day mediation with D. Charles Stohler, Esq., an experienced mediator in the field of employment law class actions.  The parties were able to bridge their different positions and reached a proposed classwide settlement.  Through those negotiations, and based on Class Counsel's experience, Plaintiffs identified the following risks, among others, to continued litigation:

- The risk that the Court would dismiss the case as to certain plaintiffs and class members and refer their claims to arbitration.

- The risk that the Court would not certify a class in this suit (or that the class would be subject to later decertification).

- The risk that either the Court, on summary judgment, or a jury would ultimately rule against Plaintiffs and the class.

- The risk that a jury would award less than the maximum recovery to Plaintiffs and the class after a trial.

The result of those negotiations is that the parties have agreed to resolve their claims on behalf of the putative class, for the total sum of $200,000 (subject to Court approval).  A copy of the parties' settlement agreement is attached as Exhibit A.  Taking into consideration the procedural posture of this case, counsel's knowledge of the facts and law relevant to the issues, and the uncertainty and expense of further litigation, Plaintiffs submit that this proposed settlement is a fair, reasonable, and adequate result for the class.

Plaintiffs respectfully ask that the Court (1) certify the proposed settlement class[2]; (2) preliminarily approve this settlement as fair, reasonable, and adequate, pursuant to the proposed order attached as Exhibit C; and (3) authorize the parties to issue notice to the settlement class members in the form attached as Exhibit B.  That notice describes the claims in this case, the terms of the proposed settlement, and the plan for distribution.  It will also inform class members of the date, time, and location of the final approval hearing (once it has been scheduled) and provide them with a means for requesting exclusion from or objecting to the settlement, should they wish to do so.

As discussed in more detail below, the proposed settlement is fair, reasonable, and adequate, and satisfies the requirement for approval under Fed. R. Civ. P. 23(e).  It is the product of litigation and lengthy negotiation between adverse parties represented by experienced counsel.  It also represents a substantial recovery for a large group of security officers, allowing them to obtain a meaningful monetary award without the delays and uncertainty of pursuing this case through trial and appeal.  Accordingly, Plaintiffs respectfully ask that the Court preliminarily approve this class settlement.

---

[2] The proposed class is defined as:

> All security officers who have worked for G4S Secure Solutions (USA), Inc. and/or Universal Protection Service, LLC d/b/a Allied Universal Security Services at the General Electric Company's headquarters in Boston, Massachusetts at any time between May 19, 2019, and the date of preliminary approval who do not seek to exclude themselves from the class settlement.

## PROPOSED SETTLEMENT

### I.    The proposed plan for notice.

Assuming the Court grants preliminary approval, the parties will thereafter retain a third-party settlement administrator who will be responsible for issuing notice to the class members, following up on undeliverable correspondence, and distributing payments to class members.  The settlement administrator will send the notice by first-class mail to the last known address of each individual who meets the proposed settlement class definition set forth in the preliminary approval order.  The settlement administrator will simultaneously send the notice by email to all class members for whom an email address is available.  Class members will have 60 days from the date that notice is issued to request exclusion from or submit an objection to the proposed settlement.

The proposed notice unquestionably constitutes sufficient notice for purposes of settlement approval.  It describes in plain terms the allegations in this case, the terms and the amount of the settlement, the provision for attorneys' fees, and the proposed enhancement payments to the Named Plaintiffs.  It also identifies the date, time, and location of the final approval hearing, and affords class members the means and opportunity to request exclusion or file an objection.  2 McLaughlin on Class Action § 6:17 (10th ed.) ("settlement notice . . . must contain enough information about the settlement and its implications for participants to enable class members to make an informed decision about whether to be heard concerning the settlement") (collecting cases).

6

Furthermore, sending notice by first-class mail to the last known address of each class member is the best practicable and most widely accepted means of disseminating information about the settlement. *Id.* ("[C]ourts have consistently held that first-class mail addressed to class members' last known address . . . [is] sufficient to satisfy the notice requirements") (collecting cases); *see also In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197, 218 (D. Me. 2003) ("[I]ndividualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances"). Courts have also endorsed use of email and/or use of multiple forms of contact to provide notice of proposed class settlements. *See Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 163 (D. Mass. 2019) ("[E]mail notice is appropriate in this case because it is likely to be more effective than alternative methods."); *Graham v. Hall's S. Kitchens, LLC*, No. 2:18-CV-02621-RMG, 2018 WL 6177971, at *2 (D.S.C. Nov. 27, 2018) ("[T]he Court finds that notice via email is appropriate in today's mobile society."); *see also In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 5710424, at *1 (D. Mass. Nov. 27, 2017) (approving notice by first-class mail plus posting notice on settlement website). Thus, Plaintiffs submit that their proposed plan, which includes at least two forms of notice where possible, sent directly to the class members, is fair, reasonable, and adequate.

## II.    The proposed plan for distribution of the settlement fund.

The parties have agreed to settle this case for $200,000. From that amount, the settlement agreement provides that one-third be used to pay Plaintiffs' counsel for their attorneys' fees (totaling $66,000); $12,500 be paid as an enhancement award to Named

Plaintiff Fadel and $3,000 each as enhancement awards to Named Plaintiffs Aitelhadj, Coleman, Greene, and McGunigle as compensation for their significant time and effort in prosecuting this case on behalf of their fellow officers and for a broader general release of all known and unknown claims; a reasonable amount not to exceed $5,000 be used to pay Plaintiffs' counsel for litigation expenses, and a reasonable amount to the settlement administrator for its services. The remaining amount (less any amounts that would have been paid to class members who choose to opt out of the settlement) will be distributed to the settlement class members. The settlement agreement also provides that the amount of each such payment be calculated proportional to the amounts of wages that allegedly were not paid to class members from May 16, 2019 to the date of preliminary approval. Specifically, the formula for calculating class members' settlement shares will take into account their hourly pay rate and average shifts per week to calculate each class members' unpaid wages owed (assuming ten unpaid minutes per shift per class member) and distributing the class members' settlement shares proportional to their potential damages. In this manner, each settlement class member would receive a settlement payment that is commensurate with the damages they allegedly sustained. The agreement further provides that a small reserve fund (of $1,000) be set aside to resolve disputes and other administrative issues. Any amounts from uncashed checks and from any reserve fund would be held for 180 days from the date checks are mailed and used to resolve disputes, if necessary. After the 180 days have elapsed, the agreement provides that all remaining residual funds be distributed on a *cy pres* basis to the Employment Unit of Greater Boston Legal Services.

At the hearing on this preliminary approval motion, the parties will request that the Court schedule a final approval hearing. In a motion for final approval and at the final approval hearing, Plaintiffs will report on the results of the notice process (i.e., the class members' response to the settlement and whether any class members have opted out of or objected to the settlement) and will, prior to or in connection with that motion, provide detailed submissions regarding their fees and expenses.

Pursuant to the parties' settlement agreement, payments from the settlement fund would begin no later than 30 days after the Court grants final approval of the settlement and the Defendants' funding of the settlement.

## ARGUMENT

### I.  The Court should certify the proposed settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3).

The Court may certify a class when it determines the proposed class satisfies the prerequisites of Federal Rule of Civil Procedure 23(a), and one of the requirements of Rule 23(b). *See Prinzo v. Hannaford Bros. Co., LLC,* 343 F.R.D. 250, 251 (D. Mass. 2023) *(citing Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir. 2003)). Here, the putative class readily meets the requirements for Rule 23 class certification.

The requirements under Rule 23(a) for class certification are: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

9

First, to satisfy Rule 23(a)(1), a class must be "so numerous that joinder . . . is impracticable." Fed. R. Civ. P. 23(a)(1). This is a "low threshold," which is generally satisfied when the putative class exceeds 40 members. *García–Rubiera v. Calderón*, 570 F.3d 443, 460 (1st Cir. 2009) (citation omitted). Here, the class (*see supra* n.2) includes over one hundred individuals; this element is unquestionably satisfied.

Second, there are numerous questions of law and fact common to the class. Significantly, Rule 23(a)(2) does not require that plaintiffs establish that all facts or legal issues are common to the class. "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" *Prinzo*, 343 F.R.D. at 252 (quoting *Fleming v. Select Portfolio Servicing*, 342 F.R.D. 361, 365 (D. Mass. 2022)). And "[c]ommonality demands only the existence of a "*single issue common* to all members of the class." *Id.* (quoting *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l.*, Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008)) (emphasis in original). This standard is clearly satisfied here, where Plaintiffs have asserted claims challenging compensation practices applicable to all members of the class—either Defendants required security officers at General Electric headquarters to arrive early, without compensation, or did not, and Plaintiffs believe that question is capable of classwide resolution.

Third, Plaintiffs' claims are typical of the class. Typicality is "'not highly demanding' because 'the claims only need to share the same essential characteristics, and need not be identical.'" *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 24-25 (D. Mass. 2003) (quoting 5 Moore's General Practice § 23.24[4]). "For purposes of demonstrating typicality, '[a] sufficient nexus is established if the claims or defenses of

the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005) (quoting *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004)). Here, the claim of all class members is the same, relying on the same legal theory. Indeed, any security officer employed at General Electric headquarters would be typical in this case, because Plaintiffs assert that the challenged pay practices affected every such officer equally and, if proven, violated Massachusetts wage laws in the same manner. *See, e.g., McLaughlin v. Liberty Mut. Life Ins. Co.*, 224 F.R.D. 304, 309-310 (D. Mass. 2004) (typicality satisfied where plaintiffs "were all employed by the defendant" and their claims arose "out of the same policies and wrongful conduct of the [d]efendant, and [were] based on the same legal theories").

Fourth, Plaintiffs and Class Counsel will fairly and adequately protect the interests of the class. Two factors must be satisfied to fulfill this prerequisite: "First, there must be an absence of potential conflict between the named plaintiff and the potential class members, and, second, the counsel chosen by the class representative must be 'qualified, experienced, and able to vigorously conduct the proposed litigation.'" *Glass Dimensions, Inc. v. State Street Bank & Trust Co.*, 285 F.R.D. 169, 179 (D. Mass. 2012) (quoting *Adair v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991)); *see also Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 345 (1st Cir. 2022). There are no conflicts of interest or antagonism between Plaintiffs and their counsel and the Class. Plaintiffs and the absent Class Members have a shared interest in recovering the money to which they are entitled under Massachusetts wage laws. To represent themselves and

the Class, Plaintiffs retained counsel highly experienced in class action litigation (and, particularly, employment class action litigation).  Plaintiffs and their counsel have prosecuted, and will continue to prosecute, this action vigorously on behalf of the Class. Adequacy of representation requirement is satisfied.

Finally, the requirements of Fed. R. Civ. P. 23(b) are satisfied for purposes of settlement.  First, Plaintiffs maintain that questions of law and fact common to class members predominate over individual issues.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance "does not require an entire universe of common issues," only "'a sufficient constellation' of them." *In re Relafen Antitrust Litig.*, 231 F.R.D. at 70 (*quoting Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000)).  Significantly, "[a] 'single, central issue' as to the defendant's conduct vis-a-vis class members can satisfy the predominance requirement even when other elements of the claim require individualized proof." *Payne*, 216 F.R.D. at 26 (*quoting In re Prudential Ins. Co. of Am. Sales Pracs.*, 148 F.3d 283, 314 (3d Cir. 1998)).  Plaintiffs assert their claims are predominated by common questions of law and fact.  These common questions include: Defendants' policies as to when officers were required to arrive for their shifts; whether or not officers were compensated for that time; and whether or not officers were properly paid overtime wages.

Second, a class action is superior to any other available method for the fair and efficient adjudication of the controversy.  The superiority requirement is designed to

ensure the "'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all.'" *Amchem Prods., Inc.*, 512 U.S. at 617. Here, it is in class members' interests to have this case proceed on a class basis for several reasons, including that: the claims are the same for all class members, so it is more efficient to try them together; many class members may only have small amounts in damages, so they may not be incentivized to pursue a case individually; and many class members may still work for Allied Universal (and/or in the security industry generally) and may be reluctant to bring claims for fear of retaliation. *See, e.g., Overka v. American Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) (class action superior where plaintiffs argued that "fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis").

## II.    The proposed settlement is fair, reasonable, and adequate.

Settlement is favored over protracted litigation. Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); *see also Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 638 (2007) (recognizing a "well-established public policy favoring the private settlement of disputes"); *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 73 8, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement" of class action claims.). The advantages of settlement to the parties and the courts are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331

(5th Cir. 1977) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement,' [which] minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").

Before approving a class action settlement, the Court must find that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *see also In re Relafen Antitrust Litig.*, 360 F. Supp. 2d 166, 195 (D. Mass. 2005). At the preliminary approval stage, the court need not "come to a final conclusion as to whether the proposed settlement is fair, reasonable, and adequate," *In re Massachusetts Smokeless Tobacco Litig.*, 23 Mass. L. Rptr. 719, 2008 WL 1923063, *3 (Mass. Super. 2008). Rather, the court should grant preliminary approval if the proposed settlement "appears to fall within the range of possible approval." *In re Prudential Sec. Litig.*, 163 F.R.D. 345, 355 (E.D.N.Y. 2006). When evaluating a class action settlement for purposes of approval, a "court's discretion is restrained by 'the clear policy in favor of encouraging settlements.'" *Durett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (citations omitted).

At the preliminary approval stage, a presumption of fairness is established where the parties can show that: (1) the settlement was the product of arms' length bargaining; (2) sufficient discovery and investigation has been taken to enable counsel and the court to act intelligently; and (3) the proponents of the settlement are counsel

experienced in similar litigation.[3] *In re M3 Power Razor System Marketing & Sales Practice Litigation*, 270 F.R.D. 45, 62-63 (D. Mass. 2010); *see also* Newburg on Class Actions § 11:41.

All three of these factors weigh decisively in favor of preliminary approval. First, the settlement was the product of arms' length bargaining.  Indeed, the parties in this case reached this settlement after months of litigation and a day-long mediation facilitated by an independent and experienced mediator.  Second, Defendants produced ample discovery prior to the mediation, showing class members' shifts, hours worked, and pay.  Class Counsel also had the benefit of extensive conversations with Named Plaintiffs, experienced, long-term employees, who had extensive insight into, and evidence of, Defendants' past practices.  Both sides submitted to the mediator and shared with one another pre-mediation statements with detailed factual support for their respective positions.  The parties, therefore, were well aware of the merits of their positions, and the risks of continued litigation before negotiating.  *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)).

---

[3]    At the final approval stage, there is a fourth factor – that the number of objectors or interests they represent is not large when compared to the class as a whole.  *Id.*  This factor is not relevant at this stage because notice has not yet issued, so class members have not yet had the opportunity to learn about the settlement or object.

Third, counsel for all parties are experienced in this type of litigation. Hillary Schwab and Osvaldo Vazquez of Fair Work, P.C. and Alan D. Meyerson of the Law Office of Alan David Meyerson together have extensive experience litigating and settling class actions, including claims brought under the Massachusetts wage laws. Similarly, Defendants' counsel Robin E. Largent, Kelly Eisenlohr-Moul, and Devin S. Cohen of Martenson, Hasbrouck & Simon LLP and Mark S. Bodner of Melick & Porter, LLP have litigated numerous class and collective action cases involving wage laws throughout the country. Thus, both sides in this case are well versed in this area of law and are familiar with the issues and risks involved in wage and hour-related class action litigation.

### III. The proposed payments to the named plaintiffs are fair and reasonable.

At the final approval hearing, Plaintiffs will also request enhancement awards to each of the Named Plaintiffs as described above. The Court need not make a final ruling on Named Plaintiffs' payments until the time of final approval (when it can assess any objections), but the proposed payments are intended to compensate Baraa Fadel, Hakima Aitelhadj, KaRon Coleman, Matthew Greene, and Joseph McGunigle for the effort and risk associated with their role in serving as named plaintiffs in this case and for their broader general releases of claims against Defendants, as well as to compensate Plaintiff Fadel for his additional alleged damages related to his compelled

participation in the weekly telephone conferences and other off-the-clock work described in the Complaint.

Courts have widely recognized that enhancement awards serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements.  *See Murray*, 55 F.4th at 353 ("incentive payments remove an impediment to bringing meritorious class actions" since named plaintiffs must "bear the brunt of litigation"); *see also Carlson v. Target Enter., Inc.*, 447 F. Supp. 3d 1, 5 (D. Mass. 2020) ("Courts 'routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'") (quoting *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. Sept. 13, 2011)); *Sparks v. Mills*, No. 2:20-CV-190-LEW, 2022 WL 3645704, at *5 (D. Me. Aug. 24, 2022) ("A named plaintiff is a necessary component of any class action, and thus, a service award may be appropriate to induce an individual to take part in the suit.'") (quoting *Venegas v. Glob. Aircraft Serv., Inc.*, No. 2:14-cv-00249-NT, 2017 WL 2730025, at *4 (D. Me. June 26, 2017)).  As one federal district court has noted, enhancement awards "are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . It is important to compensate plaintiffs for the time they spend and the risks they take."  *Beckman*, 293 F.R.D. at 483 (citations omitted).

It is not uncommon for courts to approve enhancement awards substantially greater than those requested in this case. *See, e.g., Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020) (awarding $20,000 enhancement award to ERISA plaintiff who willingly put himself forward in litigation against former employer, risking "alienation from employers or peers"); *Gordon v. Mass. Mutual Life Ins. Co.*, No. 13-CV-30184-MP, 2016 WL 11272044, at *1 (D. Mass. Nov. 3, 2016) (awarding enhancement awards of $20,000 each to named plaintiffs); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 (approving enhancement payments ranging from $8,000 to $14,000); *Carlson*, 447 F. Supp. 3d at 5 (approving enhancement award of $7,500).[4]  In wage and hour cases, "awards of $10,000 and $15,000 are not uncommon and on occasion reach $20,000, $30,000 and higher."  *Scovil*, 2014 WL 1057079 at *6 (summarizing cases).  As in these cited cases, the proposed enhancement awards here are reasonable where Named Plaintiffs have invested significant personal time in the litigation on behalf of the class, assisting in investigation, negotiation strategy, and in the mediation itself.

---

[4]    *Accord Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, *5-8 (D. Me. Mar. 14, 2014) (approving enhancement awards for named plaintiffs ranging from $10,000 to $20,000 in wage and hour case); *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *8 (S.D.N.Y. June 7, 2011) (awarding enhancement awards of $10,000 and $15,000 each to named plaintiffs in wage class action); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (awarding enhancement awards of $25,000 and $5,000); *Godshall v. Franklin Mint Co.*, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (awarding $20,000 enhancement awards to each of two named plaintiffs in wage class action); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) (awarding enhancement awards of $25,000 and $10,000).

Enhancement awards serve a particularly important role in employment class actions. Lead plaintiffs may risk their livelihood and future employment prospects to bring a case forward on behalf of their fellow co-workers, especially in a relatively narrow field such as the security guard industry.  Precisely because so many employees are afraid of the very real risk of retaliation or other ill effects, courts have recognized the important role of enhancement awards in the employment context.  "The reason commonly given for the higher awards in [employment] cases is the fear and risk of retaliation and embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases, employment or not." *Scovil*, 2014 WL 1057079, at *6.  "[Enhancement] awards are particularly appropriate in the employment context.  In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

Plaintiff Fadel's proposed enhancement award of $12,500 is also reasonable, reflecting both his releasing additional claims against Defendants and his substantial assistance in the case and the mediation.  Above and beyond the requirements allegedly placed on other class members, Defendants additionally allegedly obligated Plaintiff Fadel to participate in the weekly telephone conferences and other, off-the-clock work of updating upper management described in the Complaint.  In addition, Plaintiff Fadel assisted in preparing for the mediation and attended the entire session, detailing for the mediator his own experiences and his understanding of Defendants' practices.  His

19

participation was critical in enabling the parties to reach an agreement, rendering his enhancement award reasonable.  *See generally Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 774 (D. Md. 2022) (approving enhancement awards to ERISA plaintiffs ranging from $10,000 to $15,000, varying based on participation in litigation).  He also served as a liaison between Class Counsel and the other Named Plaintiffs, putting in extensive time communicating with and updating the other Named Plaintiffs and gathering information for Class Counsel.

For all of these reasons, Plaintiffs submit that the proposed enhancement awards are fair and reasonable.

**IV.    The proposed attorneys' fee award is fair and reasonable.**

Lastly, the proposed settlement provides for a standard one-third share of the gross settlement fund to be paid as attorneys' fees to Plaintiffs' counsel.  That allocation is fair and reasonable and should be preliminarily approved by the Court.  Named Plaintiffs signed retainer agreements providing for a one-third contingency payment. Moreover, the class notice clearly explains to the class that one-third of the settlement proceeds will be used to pay for attorneys' fees. The Court need not make a final ruling on attorneys' fees until the final approval hearing, at which point any objections will be known.

Courts generally favor an award of fees from a common fund, as called for by the proposed settlement in this case.  As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or

20

> his client is entitled to a reasonable attorney's fee from the fund as a
> whole. . . . Jurisdiction over the fund involved in the litigation allows a
> Court to prevent . . . inequity by assessing attorney's fees against the
> entire fund, thus spreading fees proportionately among those benefited by
> the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted); *accord US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 & n.4 (2013) (collecting cases and noting that the doctrine is based in equity and avoids unjustly enriching those who benefit from a suit). When awarding fees from a common fund, the "percentage of the fund" method is preferred over the lodestar method. The First Circuit has recognized that the percentage method is less burdensome to administer than the lodestar method. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995); *see also Carlson*, 447 F. Supp. 3d at 3 ("In the First Circuit, the percentage of fund methodology . . . is favored and appropriate in common fund cases."). The First Circuit also endorsed the percentage method because it is result-oriented, and therefore promotes a more efficient use of attorney time – a lodestar method may give attorneys an incentive to spend as many hours as possible on the litigation and may discourage early settlements. *See In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-MD-02878-NMG, 2022 WL 4329646, at *3 (D. Mass. Sept. 19, 2022) ("The First Circuit has acknowledged the "distinct advantages" of the POF method, explaining that it is less burdensome, enhances efficiency and better approximates the marketplace dynamics."). When using the percentage method, courts

routinely approve fee awards that represent one-third of the settlement fund.[5]  *See, e.g.,*

*Torres et al. v. Niche, Inc.*, C.A. No. 12-cv-12059-RGS (D. Mass. Mar. 19, 2015) (approving

one-third attorneys' fee payment in putative class action settlement in case asserting

claims under Worker Adjustment and Retraining Notification Act).

    An award of one-third of the fund is fair and reasonable for three primary

reasons.  First, awarding one-third from the common fund recognizes the vital role that

contingency arrangements play in making legal counsel available to individuals who

cannot afford hourly fees.  Unlike traditional firms that receive hourly fees on a

monthly basis, employment counsel who take cases on contingency often spend years

litigating cases (typically while incurring significant out-of-pocket expenses for experts,

transcripts, travel, etc.), without receiving any ongoing payment for their work.

Sometimes fees and expenses are recovered; other times, despite hundreds of hours of

work, nothing is recovered.  This type of practice is viable only if attorneys, having

received nothing for their work on some cases, receive more in other cases than they

---

[5]    A sample of cases in which a one-third fee was approved include: *Gordan*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016); ("[T]he one-third fee requested here is fair and reasonable"); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 85–89 (D. Mass. 2005); *Applegate v. Formed Fiber Techs., LLC*, 2013 WL 6162596, at *1 (D. Me. Nov. 21, 2013) *McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883, at *1 (D. Me. June 20, 2011); *Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447, at *2 (D. Me. May 4, 2011) (describing one-third fee as "customary"); *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772, at *6 (D.N.H. Dec. 18, 2007) *Chalverus v. Pegasystems, Inc.*, C.A. No. 97-12570-WGY (D. Mass. December 19, 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); *see also Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016) ("[A]s several courts have concluded, 30% is not out of proportion with recovery percentages in large class action litigations.") (collecting cases).

would if they charged hourly fees.  Courts have long recognized this reality.  *See, e.g., In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 724 F. Supp. 160, 168 (S.D.N.Y. 1989) ("Contingent fee arrangements implicitly recognize the risk factor in litigation and that the winning cases must help pay for the losing ones if a lawyer who represents impecunious plaintiffs, or those plaintiffs not so fully committed as to put their own money where their mouth is, will remain solvent and available to serve the public interest.")

The inability of plaintiffs to afford hourly fees is especially common in the employment context, where many workers are low wage earners and cannot pay several hundred dollars per hour for legal representation.  Contingency fee arrangements make it possible for firms such as Fair Work, P.C. and the Law Office of Alan David Meyerson to "serve the public interest" by taking on class actions that deter wage law violations by employers.  *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 178–79 (D. Mass. 2006).  "Allowing private attorneys to prosecute such actions in the aggregate effectively ensures enforcement of the wage laws by motivating employers to comply or face potentially large-scale litigation, and by providing counsel with an incentive to pursue such claims."  *Id.* at 179.

Second, a one-third award incentivizes parties to discuss settlement early and reach an early resolution of a case, if possible.  Indeed, it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Eastman Kodak*, 228 F.R.D. at 188 (granting 40% fee request).

Third, a one-third award recognizes that firms may spend years developing the case law in a particular field and obtaining favorable decisions, all of which contributes to efficient and effective litigation on behalf of plaintiffs.  *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) ("[T]he Court finds that public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so.'") (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d. 319, 359 (S.D.N.Y. 2005)).  Here, for example, Plaintiffs' counsel collectively have extensive experience litigating class action wage cases and have contributed to the development of the law in this area.  That experience also significantly increased the risks of trial and appeal for Defendant.

Based on these considerations, Plaintiffs propose that a one-third award from the settlement fund for fees is fair and reasonable, and ask that it be preliminarily approved by the Court.

## CONCLUSION

For the reasons set forth here, Plaintiffs respectfully ask that the Court enter the proposed preliminary approval order attached here as Exhibit C, and authorize the parties to issue the notice attached to this motion as Exhibit B.

Respectfully submitted,

BARAA FADEL, HAKIMA AITELHADJ,
KARON COLEMAN, MATTHEW GREENE,
and JOSEPH MCGUNIGLE on behalf of
themselves and others similarly situated,

By their attorneys,


 /s/ Osvaldo Vazquez
Hillary Schwab, BBO #666029
Osvaldo Vazquez, BBO #711808
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
www.fairworklaw.com
Email: hillary@fairworklaw.com
        oz@fairworklaw.com

Alan D. Meyerson, BBO #682515
Law Office of Alan David Meyerson
100 State Street, Suite 900
Boston, MA
(617) 444-9525
Email:  alan@alandavidmeyerson.com


Dated: June 8, 2023

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on June 8, 2023, I served a copy of the foregoing document, through the ECF system, on counsel for the Defendants.

_/s/ Osvaldo Vazquez_
Osvaldo Vazquez, Esq.